# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In the Matter of Kay Paschal, Respondent.

Appellate Case No. 2015-000534

Opinion No. 27523
Submitted April 23, 2015 – Filed May 13, 2015

## DEFINITE SUSPENSION

Lesley M. Coggiola, Disciplinary Counsel, and Barbara
M. Seymour, Deputy Disciplinary Counsel, both of
Columbia, for Office of Disciplinary Counsel.

S. Jahue Moore, Sr., Esquire, of Moore Taylor Law Firm,
P.A., of West Columbia, for Respondent.

**PER CURIAM:**   In this attorney disciplinary matter, respondent and the Office
of Disciplinary Counsel have entered into an Agreement for Discipline by Consent
(Agreement) pursuant to Rule 21 of the Rules for Lawyer Disciplinary
Enforcement (RLDE) contained in Rule 413 of the South Carolina Appellate Court
Rules (SCACR).  In the Agreement, respondent admits misconduct and consents to
the imposition of a definite suspension of nine (9) months to three (3) years or
disbarment.  Respondent requests that the suspension or disbarment be imposed
retroactively to January 3, 2012, the date of her interim suspension.  In the Matter
of Paschal, 396 S.C. 286, 721 S.E.2d 428 (2012).  In addition, respondent agrees to
pay the costs incurred in the investigation and prosecution of this matter within
thirty (30) days of the imposition of discipline.  We accept the Agreement and
suspend respondent from the practice of law in this state for three (3) years,
retroactive to the date of her interim suspension.  Further, we order respondent to
pay the costs incurred in the investigation and prosecution of this matter within

thirty (30) days of the date of this opinion. The facts, as set forth in the Agreement, are as follows.

## Facts

### Background

Mr. Doe owned a real estate investment company. Respondent met Mr. Doe in March 1984 when he came to her office to meet a client. At the time respondent met Mr. Doe, he was married to Mrs. Doe who also served as the corporate secretary for the real estate investment company. Mr. and Mrs. Doe had two children.

Shortly after they met in 1984, respondent and Mr. Doe began a private, personal relationship. In early 1985, respondent and Mr. Doe began a secret, sexual relationship that continued until after Mrs. Doe's death in 2001.

In 2005, respondent and Mr. Doe lived together and continued their sexual relationship. They remained close companions. Mr. Doe died in February 2011 at the age of 88.

### Matter I

From 1986 until 1997, respondent represented Mrs. Doe in a variety of legal matters. Those legal matters included:

1. representation of Mrs. Doe in connection with the purchase of several parcels of real estate including contract negotiation and drafting, title searches, deed preparation, and closing services;

2. representation of Mrs. Doe and others in connection with joint venture sales of several parcels of real estate including contract negotiation and drafting, title searches, deed preparation, and closing services;

3. representation of Mrs. Doe as the plaintiff in two foreclosure lawsuits;

4. preparation of various incorporation and joint venture documents on behalf of Mrs. Doe;

5. correspondence and other collections activities directed toward Mrs. Doe's debtors;

6. drafting notes, mortgages, title opinions, and assignments related to loans made by Mrs. Doe to others;

7. drafting various documents related to the power of attorney Mrs. Doe held for her aunt;

8. representation of Mrs. Doe as personal representative of the estate of her aunt, including preparation of the estate tax return;

9. advising Mrs. Doe regarding various leases and other contracts, including drafting of contracts and amendments;

10. assisting Mrs. Doe in the negotiation of medical bills and health insurance claims;

11. advising Mr. and Mrs. Doe regarding an Internal Revenue Service audit; and

12. drafting a contract for Mr. and Mrs. Doe for renovations to their home.

For these various legal matters, respondent collected in excess of $8,150.00 in legal fees from or on behalf of Mrs. Doe. For several closings on behalf of Mrs. Doe's joint ventures, respondent also collected in total approximately $1,400.00 in commissions on behalf of respondent's own real estate company, Kaspar Properties. Throughout this time, respondent was engaged in a sexual relationship with Mr. Doe, her client's husband. Also during this time, Mr. Doe was providing respondent with personal financial support, including loans, gifts of cash, and payment of some living expenses. Respondent did not disclose the affair, the extent of financial support, or the resulting conflict of interest to Mrs. Doe.

There is no evidence that respondent took any action adverse to, or otherwise compromised, Mrs. Doe's legal interests.

<u>Matter II</u>

During the time that he was married to Mrs. Doe, respondent represented Mr. Doe in a variety of legal matters, including:

1. representation of Mr. Doe and his companies in connection with the purchase of several parcels of real estate including contract negotiation and drafting, title searches, deed preparation, and closing services;

2. preparation of various incorporation and joint venture documents on behalf of Mr. Doe and others;

3. representation of Mr. Doe and others in connection with joint venture sales of several parcels of real estate including contract negotiation and drafting, title searches, deed preparation, and closing services;

4. drafting notes, mortgages, title opinions, and assignments related to loans made by Mr. Doe to others;

5. advising Mr. Doe regarding various leases, easements, building repair agreements, property maintenance agreements, and other contracts, including negotiating and drafting of contracts and amendments;

6. representation of Mr. Doe and his companies in negotiating and resolving disputes with various entities, including a former business partner, the children of a deceased business partner, various contractors, a property manager, a utility company, and city officials;

7. representation of Mr. Doe and his companies in court in connection with the prosecution and defense of several legal actions, including several foreclosures, a breach of contract case, a property damage claim, a condemnation action, a bankruptcy filed by one of his debtors, a personal injury claim, a right-of-way dispute, a mechanics lien claim, a tax assessment appeal, and a landlord-tenant dispute;

8. correspondence and other collections activities directed toward Mr. Doe's debtors and tenants;

9. assisting Mr. Doe in the negotiation of medical bills and health insurance claims;

10. advising Mr. and Mrs. Doe regarding an Internal Revenue Service audit; and

11. negotiating and drafting a contract for Mr. and Mrs. Doe for renovations to their home.

For these various legal matters, respondent collected in excess of $20,000.00 in legal fees from Mr. Doe and his companies. For several closings on behalf of Mr. Doe's joint ventures, respondent collected approximately $23,000.00 in commissions on behalf of respondent's own real estate company, Kaspar Properties. In addition, during this time, respondent assisted Mr. Doe with his companies' accounting and other recordkeeping as well as property management. From 1998 through 2001, respondent received approximately $34,600.00 in consulting fees for these services.

Throughout this time, respondent was engaged in a sexual relationship with Mr. Doe, her client. Also during this time, Mr. Doe was providing respondent with personal financial support, including loans, gifts of cash, and payment of some living expenses. Further, respondent participated as a principal in various joint ventures and property investments to which Mr. Doe was an investor, officer, or partner. Respondent did not disclose to Mr. Doe the conflicts of interest arising from these various relationships and transactions.

## Law

Respondent's conduct occurred over many years, during which time the rules of conduct were revised. As to her conduct prior to 1990, respondent admits that she violated the following provisions of the Code of Professional Responsibility, Supreme Court Rule 32: DR1-102(A)(5) (lawyer shall not engage in conduct prejudicial to administration of justice); DR 5-101(except with consent of client after full disclosure, lawyer shall not accept employment if the exercise of professional judgment on behalf of client will be or reasonably may be affected by lawyer's own financial, business, property, or personal interests); DR 5-104 (lawyer shall not enter into business transaction with client if they have differing interests therein and if client expects lawyer to exercise professional judgment therein for protection of the client, unless client has consented after full disclosure); and DR 5-105 (lawyer shall decline proffered employment if the exercise of independent professional judgment on behalf of client will be or is likely to be adversely affected by the acceptance of the proffered employment;

lawyer shall not continue multiple employment if the exercise of lawyer's independent professional judgement on behalf of client will be or is likely to be adversely affected by representation of another client; lawyer may represent multiple clients if it is obvious lawyer can adequately represent the interest of each

and if each consents to representation after full disclosure of possible effect of such representation on exercise of lawyer's professional judgment on behalf of each).

As to her conduct between 1990 and 2001, respondent admits her conduct violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.7(b) (notwithstanding existence of concurrent conflict of interest, lawyer may represent client if:  lawyer reasonably believes lawyer will be able to provide competent and diligent representation to each client and each affected client gives informed consent, confirmed in writing); Rule 1.8(a) (lawyer shall not enter into business transaction with client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to client unless:  (1) transaction and terms on which lawyer acquires interest are fair and reasonable to client and fully disclosed and transmitted in writing in manner that can be reasonably understood by client; (2) client is advised in writing of desirability of seeking and given reasonable opportunity to seek advice of independent legal counsel on transaction; and (3) client gives informed consent, in writing signed by client, to essential terms of transaction and lawyer's role in transaction, including whether lawyer is representing client in transaction); and Rule 8.4(e) (it is professional misconduct for lawyer to engage in conduct prejudicial to administration of justice) .

Respondent also admits she has violated the following Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR:  Rule 7(a)(1) (it shall be ground for discipline for lawyer to violate Rules of Professional Conduct or any other rules of this jurisdiction regarding professional conduct of  lawyers).

## Conclusion

We accept the Agreement and suspend respondent from the practice of law in this state for three (3) years, retroactive to the date of her interim suspension.[1]  Further, we order respondent to pay the costs incurred in the investigation and prosecution of this matter by the Office of Disciplinary Counsel and Commission on Lawyer Conduct within thirty (30) days of the date of this opinion.  Within fifteen (15) days of the date of this opinion, respondent shall file an affidavit with the Clerk of Court showing that she has complied with Rule 30 of Rule 413, SCACR.

**DEFINITE SUSPENSION.**

**TOAL, C.J., PLEICONES, BEATTY, KITTREDGE and HEARN, JJ., concur.**

---

[1] Respondent was publicly reprimanded by the Court in 2003.  In the Matter of Paschal, 356 S.C. 15, 587 S.E.2d 113 (2003).